JUDGE JOHN C. COUGHENOUR

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| WINDSONG CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br><br>                Plaintiff,<br><br>     v.<br><br>BANKERS STANDARD INSURANCE COMPANY, a foreign corporation; ACE FIRE UNDERWRITERS INSURANCE COMPANY (f/k/a CIGNA FIRE UNDERWRITERS INSURANCE COMPANY), a foreign corporation;<br><br>                Defendants. | No. C08-0162 JCC<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: INSURANCE COVERAGE FOR "WATER DAMAGE"<br><br>**NOTE ON MOTION CALENDAR: AUGUST 29, 2008** |

## I.    INTRODUCTION & RELIEF REQUESTED

This is an insurance coverage dispute. Plaintiff Windsong Condominium Association ("the Association") is an organization of homeowners at the Windsong Condominium in Seattle. Defendants (collectively "ACE") sold the Association a series of "all-risk" property insurance policies – policies that cover "loss or damage by any cause of loss except those [listed in the "Exclusions" section]." The Policies' "wear and tear" exclusion characterizes "water damage" as a distinct and non-excluded cause of loss. The

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 1
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

Policies' "Conditions" section states that ACE will pay for covered losses arising from "an occurrence," which is as an "accident" that causes damage during the policy period. The Policies do *not* say that <u>damage</u> must occur during the policy period to be covered. Thus, if a particular event qualifies as "an occurrence" – *i.e.*, it causes damage during the policy periods – then the Policies cover *all* damage resulting from that event, regardless of when the damage occurs.

Based upon this language, the Association respectfully requests a partial summary judgment order that (1) the ACE Policies cover "water damage" caused by accidental leaks; and (2) if *some* of this "water damage" occurred during ACE's policy periods, then ACE is liable for *all* water damage resulting from such leaks.[1]

## II. STATEMENT OF FACTS

### A. THE ACE POLICIES

ACE sold the Association four "package" insurance policies (*i.e.*, policies with both "liability" and "property" coverage).[2] The "policy periods" ran from May 18, 1989 to May 18, 1993.[3]

The "declarations" pages identify the "covered location" for purposes of the "property coverages" as 12349 Roosevelt Way NE, Seattle, WA 98125, the address of the Windsong Condominium.[4] The "limits of insurance" for the "real property" insured under

---

[1] The Association is seeking an order regarding *what* the Policies cover. The Association is not seeking an order that covered damage *exists* at the Condominium – something that the Association assumes ACE will argue raises an issue of fact.

[2] *See Declaration of Todd C. Hayes,* at 5 of 139, at 32 of 139 (referring to "property" and "general liability" coverage forms).

[3] *See Hayes Decl.*, at 5 of 139.

[4] *Hayes Decl.,* at 44 of 139.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 2
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

the property coverage vary from $1,091,800 to $1,198,700.[5] The declarations pages identify the "Level of Protection" afforded by the property insurance as "Comprehensive."[6]

The property insurance in each Policy consists of six "sections" contained in four "forms." Sections "I" through "III," which identify the *type* of property covered (*e.g.*, "buildings," "structures," "shrubs"), are in the "Commercial Property Coverage Form" (form number FA-2R62).[7] The other sections and their corresponding forms are: "Section IV. Level of Property Protection – Comprehensive Protection" (form FA3R84); "Section V. Commercial Property Conditions" (form FA-3R85); and "Section VI. Commercial Property Coverage Definitions" (form FA-3R86).[8]

According to the form labeled "Section IV. Level of Property Protection – Comprehensive Protection," the ACE property insurance is "all-risk" – the Policies cover any "risk of direct physical loss or damage" unless the cause of loss is excluded:

> When Comprehensive Protection is shown in the Declarations, your covered property is insured against the risk of direct physical loss or damage by any cause of loss except those under Comprehensive Protection – Exclusions.[9]

The "Commercial Property Conditions" form states that ACE will pay up to the coverage limit listed in the Declarations for "covered losses"[10] that arise from "an occurrence":

---

[5] *Hayes Decl.*, at 33, 38, 43, and 54 of 139.

[6] *Id.*

[7] *Hayes Decl.*, at 72, 74 and 75 of 139. Section I is "Your Property Coverage," Section II is "Extensions of Property Coverage," and Section III is "Optional Property Coverages."

[8] *Hayes Decl.*, at 88, 90, and 96 of 139.

[9] *Hayes Decl.* at 88 of 139; *see also Hayes Decl.*, at 11 of 139 (letter from ACE counsel) ("The ACE policies provide insurance coverage for the risk of direct physical loss or damage by any cause of loss except those excluded.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 3
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

**Coverage Limits**

Each coverage limit in the Declarations shows the most we will pay, under each coverage, for "covered losses" that arise from any one "occurrence."[11]

An "occurrence" is "an accident, including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property, or in bodily injury, personal injury, or property damage."[12]

This "Coverage Limits" subparagraph – and the "during the policy period" language it incorporates – is the only temporal reference anywhere in the <u>property</u> insurance coverage; nowhere in the Policies' property insurance forms does ACE say that *damage* must occur during the policy period to be covered.

By contrast, ACE's <u>liability</u> insurance form states that the Policies cover the policyholder's liability for certain kinds of "property damage," but only if the "'property damage' occurs during the policy period":

> **1. Insuring Agreement.**
>
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .
>
>   . . . .
>
>   b. This insurance applies to "bodily injury" or "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
>
>   (2) The "bodily injury" or "property damage" ***occurs during the policy period.***[13]

---

[10] A "covered loss" is "loss, or damage for which [ACE] provide[s] insurance under the terms of this policy." *Hayes Decl.*, at 96 of 139.

[11] *Hayes Decl.*, at 91 of 139.

[12] *Hayes Decl.*, at 97 or 139.

[13] *Hayes Decl.*, at 102 of 139 (bold italics added).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 4
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

The "Comprehensive Protections – Exclusions" section lists the causes of loss that are excluded under the Policies' property coverage. A "wear and tear" exclusion bars coverage for loss or damage caused by "wear and tear," wet or dry rot, and other similar perils.[14] The "wear and tear" exclusion further states, however, that ACE *covers* any "resulting loss or damage" caused by "water damage":

> If you have Comprehensive Protection, your protection does not include coverage for loss or damage caused by . . .
>
> . . . .
>
> "Wear and tear," deterioration, rust, corrosion, marring or scratching, erosion, wet or dry rot, and mold. ***However, we will <u>cover</u> resulting loss or damage caused by***: vehicles or aircraft, "sprinkler leakage," <u>***water damage***</u>, freezing, collapse or a building or falling objects.[15]

The Policies do not define "water damage."

A "faulty design" exclusion similarly lists a series of non-covered perils, but then excepts from the exclusion any loss or damage that occurs "in connection with" a non-excluded cause of loss:

> If you have Comprehensive Protection, your protection does not include coverage for loss or damage caused by . . .
>
> . . . .
>
> Faulty design, workmanship and material including the cost of correcting any faulty design, workmanship, material, manufacture or installation, alteration, repair or work on covered "real property" or "personal property." ***But we will cover loss or damage that results from any of these, if the loss or damage occurs in connection with any cause of loss not otherwise excluded in this policy***.[16]

---

[14] *Hayes Decl.*, at 88-89 of 139 (emphasis added).

[15] *Id.* (emphasis added).

[16] *Id.* (emphasis added).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 5
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

## B. THE INSURANCE CLAIMS

In 2005, the Association became concerned about potential water-related damage at the Condominium and submitted a claim to ACE and another property insurer of the Condominium, State Farm Fire and Casualty Company.[17] State Farm retained structural engineer James R. Perrault to evaluate the Condominium.

Mr. Perrault performed a "destructive investigation" – he removed portions of the building's siding and other "building envelope" components so that he could evaluate the condition of the "sheathing," "framing," and other underlying building components.[18] Mr. Perrault discovered water damage to the building's sheathing and framing, particularly at the building's south elevation.[19]

Based on his investigation, Mr. Perrault ultimately concluded (a) the Condominium is suffering from water damage resulting from leaks through the building envelope, and (b) some of this leak-induced water damage occurred between 1989 and 1993:

> As a result of my investigation, I determined that certain parts of the Condominium were suffering from water damage as a result of water leaking through the Condominium's building envelope. For example, the gypsum sheathing and wood framing at the western portion of the south wall of the Condominium, adjacent to the second floor window, are damaged from water leaking through the Condominium's building envelope, probably at the intersection between the second-floor window and the siding. . . .
>
> Although the timing of this leak-induced water damage (as opposed to "collapse" damage) was not the focus of my investigation for State Farm, I did determine – based upon the condition of the building as of the date I evaluated it; the nature of the damaged building components (*e.g.*, a 2 x 6 wood joist, as opposed to concrete); and the general rate of decay of such building components – that some of this leak-induced water damage had been in existence for many years. Consistent with that, it is my opinion that some

---

[17] *Hayes Decl.*, at 132-139 of 139.

[18] *Declaration of James R. Perrault*, ¶¶ 4-5.

[19] *Perrault Decl.*, ¶ 6.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 6
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

of the leak-induced water damage at the Windsong Condominium was more probably than not in existence between 1989 and 1993.[20]

ACE received the Association's claim in November 2005.[21] Two-and-a-half years later, ACE was apparently still "investigating," so the Association filed this lawsuit. Three days after that, ACE finally sent the Association its coverage decision (a denial).[22]

### III. STATEMENT OF ISSUES

1. Whether the ACE Policies cover loss or damage from "water damage" caused by accidental leakage.

2. Whether the ACE Policies cover all water damage resulting from leaks, if those leaks caused some water damage during the ACE policy periods.

### IV. EVIDENCE RELIED UPON

This motion is based upon the pleadings and other papers previously filed in this lawsuit, together with the attached declarations of Todd C. Hayes and James R. Perrault.

### V. AUTHORITY

#### A. WASHINGTON'S RULES OF INSURANCE POLICY INTERPRETATION

This motion involves the proper interpretation of an insurance policy, which is in turn a question of Washington substantive law.[23] In interpreting an insurance policy, Washington courts give the policy a fair, reasonable, and sensible construction, "as would be given to the contract by the average person purchasing insurance."[24] When the policy

---

[20] *Perrault Decl.*, ¶¶ 6-7.

[21] *Hayes Decl.*, at 135 of 139.

[22] *Hayes Decl.*, ¶ 8; at 5 of 139.

[23] *See, e.g.*, Far Northwest Dev. Co., LLC v. Cmty. Ass'n of Underwriters of Am., Inc., 2007 U.S. Dist. LEXIS 28355 (W.D. Wash. 2007) (applying Washington law to insurance coverage dispute brought under diversity jurisdiction).

[24] Roller v. Stonewall Ins. Co., 115 Wn.2d 679, 682, 801 P.2d 207 (1990).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 7
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

language is clear and unambiguous, a court must enforce the policy as written "and may not modify it or create ambiguity where none exists."[25]

Undefined policy terms are given their "'plain, ordinary, and popular' meaning."[26] To determine that meaning, Washington courts "look to standard English dictionaries."[27] If policy language is still susceptible to two reasonable interpretations, then ambiguity exists, and the court should apply the interpretation most favorable to the insured.[28] This rule applies with "added force" if the ambiguity is in an exclusion or other coverage-limiting provision (like a policy "condition").[29]

Applying these rules here, the Court should find that because the ACE Policies characterize "water damage" as a distinct and non-excluded peril, "water damage" that results from an "accident" – such as leaking walls – is covered.

## B. THE ACE POLICIES COVER "WATER DAMAGE" CAUSED BY LEAKS

The ACE Policies are "all-risk" – they promise to cover any risk of physical loss or damage that is not excluded: "When Comprehensive Protection is shown in the Declarations, your covered property is insured against the risk of direct physical loss or damage by any cause of loss except those under Comprehensive Protection – Exclusions." Thus, the sole

---

[25] Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66, 15 P.3d 115 (2000)).

[26] Boeing v. Aetna Casualty & Surety Co., 113 Wn.2d 871, 877, 784 P.2d 507 (1990) (quoting Farmers Ins. Co. v. Miller, 87 Wn.2d 70, 73, 549 P.2d 9 (1976), and Prudential Property & Cas. Ins. Co. v. Lawrence, 45 Wn. App. 111, 724 P.2d 418 (1986)).

[27] Boeing, 113 Wn.2d at 877.

[28] Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997).

[29] Queen City Farms, Inc. v. Aetna Casualty & Surety Co., 126 Wn.2d 50, 61, 882 P.2d 703 (1994) ("Unresolved ambiguity in insurance contract language is resolved against the insurer. Where exceptions to or limitations upon coverage are concerned, this principle applies with added force.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 8
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

question regarding *what* the Policies cover (as opposed to *when* that loss must occur to be covered) is whether "water damage" is a non-excluded peril.[30]

As quoted above, the "resulting loss" clause in the "wear and tear" exclusion in the ACE Policies characterize "water damage" as a distinct (and non-excluded) peril:

> If you have Comprehensive Protection, your protection does not include coverage for loss or damage caused by . . .
>
> . . . .
>
> "Wear and tear," deterioration, rust, corrosion, marring or scratching, erosion, wet or dry rot, and mold. ***However, we will cover resulting loss or damage caused by***: vehicles or aircraft, "sprinkler leakage," ***water damage***, freezing, collapse or a building or falling objects.[31]

The Washington Court of Appeals addressed the concept of "distinct perils" in Sunbreaker Condominium Ass'n v. Travelers Ins. Co.[32] There, the policy excluded "weather conditions," but only when "weather conditions" combined with certain perils that were not relevant to the facts of the case (*e.g.*, "earth movement," "power failure"). The policy also excluded defective construction, "repeated seepage," and dry rot/fungus.[33]

The insurance company (Travelers) argued that "weather conditions" was not a distinct peril from "dry rot" or "repeated seepage," so the policyholder's loss was necessarily

---

[30] Analyzing coverage is typically a two-step process. *See, e.g.*, Overton v. Consolidated Ins. Co., 145 Wn.2d 417, 431-32, 38 P.3d 322 (2002) ("The burden first falls on the insured to show its loss is within the scope of the policy's insured losses. If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language."). But here, because the Policies cover any non-excluded physical loss, deciding coverage is essentially a one-step process – the sole issue is whether ACE can carry its burden to show that loss or damage at Windsong is subject to the Policies' exclusions or conditions.

[31] *Hayes Decl.*, at 88-89 of 139 (emphasis added). Unlike a typical "ensuing loss" provision, this one does not just say that "water damage" resulting from "wear and tear" is non-excluded, it says resulting water damage is <u>covered</u>.

[32] Sunbreaker Condominium Ass'n v. Travelers Ins. Co., 79 Wn. App. 368, 901 P.2d 1079 (1995).

[33] Sunbreaker, 79 Wn. App. at 378.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 9
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

excluded under the sequence of events that the parties had agreed occurred.[34] The policyholder countered that because the policy referred separately to "weather conditions," but excluded "weather conditions" only in certain situations, it was a distinct and non-excluded peril that was covered when it did not combine with "earth movement" and the other listed perils.

The Court of Appeals agreed. The court held that if the jury concluded "wind-driven rain"[35] was in fact the efficient proximate cause of the loss, then the loss was covered:

> The weather conditions clause evinces the insurer's intent to accept liability for loss or damage caused by wind-driven rain when the resulting damage is something other than earth movement, power failure, water damage,[36] and other exclusions contained in [paragraph] B.1. . . . .
>
> [W]ind-driven rain is a covered peril because it is not excluded (the policy only excludes weather conditions that contribute to a loss excluded in paragraph B.1.). Because the policy excludes three of these causes, while wind-driven rain is a covered peril, the efficient proximate cause rule applies.[37]

Here, as in Sunbreaker, the ACE Policies refer to "water damage," but do not exclude it (and even say it is "covered"). Thus, the Policies characterize "water damage" as a distinct, non-excluded peril.

Moreover, loss from "water damage" remains non-excluded, even if it resulted from "faulty design" or "faulty workmanship." This is because the "faulty design" exclusion has an "ensuing loss" clause:

---

[34] *See* Sunbreaker, 79 Wn. App. at 372 (noting parties "agree[d] on the sequence of events: 'dry rot began when wind-blown rain entered several components of the wall system of the south building wall.'").

[35] The policyholder characterized the relevant "weather condition" as "wind-driven rain."

[36] This is a short-hand reference; Section B.1 of the policy in Sunbreaker actually excluded several types of perils related to "water," but nothing called "water damage." *See* Sunbreaker, 79 Wn. App. at 382 (quoting section B.1.g. as excluding "Flood, surface, water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not . . . .").

[37] Sunbreaker, 79 Wn. App. at 377-78.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 10
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

> If you have Comprehensive Protection, your protection does not include coverage for loss or damage caused by . . .
>
> . . . .
>
> Faulty design, workmanship and material including the cost of correcting any faulty design, workmanship, material, manufacture or installation, alteration, repair or work on covered "real property" or "personal property." ***But we will cover loss or damage that results from any of these, if the loss or damage occurs in connection with any cause of loss not otherwise excluded in this policy***.[38]

An ensuing loss clause "says that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered."[39] Thus, even if "water damage" caused the damage at Windsong "in connection with" faulty design or faulty construction, the "water damage" would remain covered.

This covered damage also remains covered notwithstanding the Policies' "Conditions" section. As explained above, that section contains the only temporal reference anywhere in the property coverage. It *arguably*[40] states that "covered losses" must result from "an occurrence":

**Coverage Limits**

Each coverage limit in the Declarations shows the most we will pay, under each coverage, for "covered losses" that arise from any one "occurrence."[41]

An "occurrence" is "an accident, including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property, or in bodily injury, personal injury, or property damage."[42]

---

[38] *Hayes Decl.*, at 88-89 of 139 (emphasis added).

[39] McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 734, 837 P.2d 1000 (1992).

[40] This "Coverage Limits" section discusses *how much* ACE will pay, not *whether* it will pay.

[41] *Hayes Decl.*, at 91 of 139.

[42] *Hayes Decl.*, at 97 of 139.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 11
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

According to engineer James Perrault, "water damage" at Windsong resulted from leaks through the building's window-to-siding interface and other areas of the "building envelope." Those leaks are unquestionably accidental; no one will testify, for example, that a homeowner intentionally poked holes in the building's siding with the expectation that the holes would then cause damage.[43] And according to Mr. Perrault, the leaks caused *some* water damage during ACE's 1989 to 1993 policy periods. If the jury agrees, then the leaks constitute "an occurrence," and water damage remains covered notwithstanding the Policies' "Commercial Property Conditions" section.

## C. THE POLICIES COVER ALL WATER DAMAGE ARISING FROM LEAKS THAT CONSTITUTE "AN OCCURRENCE"

The Court should also determine as a matter of law that the Policies cover all water damage arising from leaks that constitute "an occurrence." In other words, if the jury determines that accidental leaks caused damage during ACE's 1989 to 1993 policy periods, and leaks are therefore "an occurrence," then the Policies cover all damage resulting from those leaks – even if some of the damage occurred before or after ACE's policy periods.

This is true for at least three reasons.

First, this interpretation is consistent with the plain language of the Policies. The Policies do not state that damage must occur during the policy period; they only state (arguably) that damage must arise from "an occurrence."[44] Thus, if the jury deems a

---

[43] Unless the resulting damage is intended, the act that causes the damage constitutes "an occurrence." *See, e.g.*, Yakima Cement Prods. Co. v. Great Am. Ins. Co., 93 Wn.2d 210, 215, 608 P.2d 254 (1980) ("accident" as used in "occurrence" definition means "an unexpected, unforeseen, or undesigned happening or *consequence* from either a known or an unknown cause.") (emphasis added).

[44] *Hayes Decl.*, at 91 of 139 ("Each coverage limit in the Declarations shows the most we will pay, under each coverage, for 'covered losses' that arise from any one 'occurrence.'").
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 12
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

particular event "an occurrence," then the Policies cover damage resulting from that occurrence – period.

A house fire provides an apt example. If a fire started at 11:55 pm on May 18, 1993 and immediately caused damage, ACE's policy says it covers the damage resulting from that "occurrence" – including the <u>post</u>-policy period charring that occurred at 12:30 am the next morning as the fire spread.

<u>Second</u>, ACE chose not to include in its *property* insurance the same type of temporal limitation that it placed in its *liability* coverage: "This insurance applies to . . . 'property damage' only if . . . [the] 'property damage' occurs during the policy period."[45] Similarly, ACE chose not to use the type of damage-based temporal limitation that other property insurers place in their property insurance policies.[46] The fact that ACE could have used this alternative language, but chose not to, is something this Court should construe against ACE: "In evaluating the insurer's claim as to meaning of language used, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question."[47]

<u>Third</u>, Washington law says that unless a policy expressly states otherwise, any insurer "on the risk" during part of an ongoing loss (like "water damage") is jointly and

---

[45] *Hayes Decl.*, at 102 of 139.

[46] *See, e.g.*, <u>Ellis Court Apts. v. State Farm</u>, 117 Wn. App. 807, 810, 72 P.3d 1086 (2003) ("The State Farm policies covered 'loss commencing during the policy period.'").

[47] <u>Lynott v. National Union Fire Insurance Co.</u>, 123 Wn.2d 678, 688, 871 P.2d 146 (1994) (quoting 13 John A. Appleman & Jean Appleman, Insurance Law & Practice § 7403 (1976)).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 13
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

severally liable for <u>all</u> of that loss, including the damage that occurs outside the insurer's policy period. *See, e.g.*, American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., Inc.[48]

B&L involved ongoing property damage (pollution), some of which occurred during a time that the policyholder was uninsured. The insurer argued that the policyholder was therefore liable for a proportionate share of the loss (and that the carriers was *not* liable for the same amount).[49] The policyholder countered that if some damage occurred during the insurer's policy period, then the policy was "triggered," and the carrier was liable for the entire ongoing loss.[50]

The Washington Supreme Court agreed with the policyholder:

> We agree . . . that Gruol[51] stands for the proposition that all insurers on the risk during the time of ongoing damage have a joint and several obligation to provide full coverage for all damages. . . .[52]

Thus, because ACE failed to expressly limit its liability for ongoing damage to damage that occurred during its policy periods, this Court should find as a matter of law that ACE is liable for all of the Condominium's ongoing water damage, including damage occurring outside the Policies' policy periods.

---

[48] American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., Inc., 134 Wn.2d 413, 430, 951 P.2d 250 (1998).

[49] B&L Trucking, 134 Wn.2d at 422.

[50] B&L Trucking, 134 Wn.2d at 422-23.

[51] Gruol Constr. Co. v. Insurance Co. of N. Am., 11 Wn. App. 632, 524 P.2d 427 (1974).

[52] B&L Trucking, 134 Wn.2d at 424; *see also* B&L Trucking, 134 Wn.2d at 427 ("As noted by the Court of Appeals and discussed below, if Northern intended solely to be liable on a pro rata basis it could have included that language in its policy."); Monsanto Co. v. C. E. Heath Compensation & Liab. Ins. Co., 652 A.2d 30, 35 (Del. 1994) ("The majority of courts have held that without a pro rata clause in the policies, the insurance companies cannot limit their obligations to a pro rata share or portion of [the insured's] liabilities.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 14
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

## VI. **CONCLUSION**

For the above-stated reasons, the Court should rule as a matter of law that (1) water damage caused by leaks is a kind of loss covered under the ACE Policies, and (2) ACE's liability for ongoing water damage is not limited to damage that occurred during the Policies' policy periods.

DATED this 7th day of August, 2008.

HARPER | HAYES PLLC

By: *[signature]*
Todd C. Hayes, WSBA No. 26361
Michael J. Crisera, WSBA No. 30353
Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 15
**C08-0162 JCC**

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on *Thursday, August 07, 2008*, I electronically filed a copy of this document with the Court using the CM/ECF system, which will send notification of such filing to the following parties:

**NAME:** Craig Bennion
**EMAIL ADDRESS:** cbennion@cozen.com
**REPRESENTING:** Defendants

DATED this 7th day of August, 2008.

_____
Todd C. Hayes

CERTIFICATE OF SERVICE - 1

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010