THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WINDSONG CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>BANKERS STANDARD INSURANCE COMPANY, a foreign corporation; ACE FIRE UNDERWRITERS INSURANCE COMPANY, f/k/a CIGNA FIRE UNDERWRITERS INSURANCE COMPANY, a foreign corporation,<br><br>Defendant. | Case No.: C08-0162 JCC<br><br>ACE'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE: INSURANCE COVERAGE FOR "WATER DAMAGE"<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTED ON MOTION CALENDAR: September 19, 2008 |

## I. INTRODUCTION

In this motion, Plaintiff Windsong Condominium Association ("the Association") seeks the Court's ruling that the property insurance policies issued to it by Defendants cover the Association's water-caused deterioration and rot damage, even though that damage is plainly excluded by the insurance policies. Characterizing its property loss as "water damage," the Association argues that the policies do not exclude "water damage" and therefore its loss must be covered. Washington courts have rejected similar attempts by policyholders to

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 1
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

rename their losses in an effort to create coverage in the face of policy exclusions. This Court should deny the Association's motion and rule that the Association's rot and deterioration damage, even if caused by water intrusion, is excluded and not covered by Defendants' policies.

The Association also seeks the Court's ruling that if some "water damage" took place during ACE's policy periods, then ACE must pay for all water damage that may have followed later. A ruling on this topic would be premature and unnecessary, as the Association has not established that any damage developed when the ACE policies were in effect. Furthermore, the rule on which the Association relies applies only to third-party liability policies, not first-party property policies such as ACE's.

## II. FACTS

Defendants Bankers Standard Insurance Company and ACE Fire Underwriters Insurance Company (formerly CIGNA Fire Underwriters Insurance Company) (collectively "ACE") issued a series of four annual insurance policies to the Association, beginning May 18, 1989. The final policy expired May 18, 1993. The policies included property insurance coverage, covering the Association's condominium building located at 12349 Roosevelt Way NE, Seattle, WA 98125.[1]

The Declarations page of the policy indicated the "Level of Protection" offered by the policy as "Comprehensive."[2] Comprehensive protection covered "the risk of direct physical loss or damage by any cause of loss except those under Comprehensive Protection – Exclusions."[3] The Comprehensive Protection form (Form FA-3R84 (1/87)) contains the following exclusions relevant to the Association's loss:

**Comprehensive Protection – Exclusions**

---

[1] A copy of the final 1992-93 policy is attached to the Declaration of Todd C. Hayes as Exhibit C, at pp. 47-131 of 139. It is undisputed that the three prior ACE policies contained language identical to that found in the 1992-93 policy.
[2] Hayes Decl., at 54 of 139.
[3] Hayes, Decl., at 88 of 139.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 2
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

> If you have Comprehensive Protection, your protection does not include coverage for loss or damage caused by or resulting directly or indirectly from the following causes, or occurring in the following situations. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently with or before, during or after a loss. But we will cover 'resulting fire or explosion' arising out of any of these excluded causes except 'war.'
>
> * * *
>
> 16. 'Wear and Tear' deterioration, rust, corrosion, marring or scratching, erosion, wet or dry rot, and mold. However, we will cover resulting loss or damage caused by: vehicles or aircraft, 'sprinkler leakage,' water damage, freezing, collapse of a building or falling objects.
>
> * * *
>
> 21. Faulty design, workmanship and material including the cost of correcting any faulty design, workmanship, material, manufacture or installation, alteration, repair or work on covered 'real property' or 'personal property.' But we will cover loss or damage that results from any of these, if the loss or damage occurs in connection with any cause of loss not otherwise excluded in this policy.
>
> 22. Settling, shrinking, cracking, bulging or expansion of any pavement, building or structure.

Hayes Decl., at 88-89 of 139.

After the Association discovered rot damage at certain areas of its building in 2005, nearly 13 years after the expiration of ACE's last policy, it submitted an insurance claim to ACE and the subsequent property insurer, State Farm Fire and Casualty Company.[4] State Farm retained structural engineer James R. Perrault, who conducted a "destructive investigation" of the building. Decl. of James R. Perrault, p. 2, ¶4. He directed that openings be made in the exterior of the building to determine if damage existed. *Id.*; Deposition of James R. Perrault, Aug. 28, 2008, p. 13.[5] Mr. Perrault observed damage as a result of water

---

[4] Hayes Decl., at 132-139 of 139

[5] The exterior walls of the Windsong building were constructed as follows: gypsum wallboard sheathing was nailed to the building's framing studs. One layer of building paper was placed over the gypsum sheathing. Traditional exterior stucco was placed over the building paper. Perrault Dep., at 17:18-18:4.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 3
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

intrusion at several locations. The most severe damage was at the south wall, with "significant decay in framing" at the southeast and southwest corners. Decay at the other walls was minor or nonexistent. He also observed some areas of water damage to the gypsum sheathing. Perrault Decl., p. 2-3, ¶6; Perrault Dep., at 13:13-14:5.

Mr. Perrault completed his work for State Farm regarding the Windsong Condominium near the end of 2006 or beginning of 2007. Perrault Dep., at 52:14-16. In June 2008, after commencement of this lawsuit, counsel for the Association contacted Mr. Perrault concerning a declaration. The Association's counsel authored the declaration and sent it to Mr. Perrault for review. Mr. Perrault made no substantive changes and signed in on July 15, 2008. Perrault Dep., at 52:17-54:9. Therefore, the specific use of the words "water damage" in paragraphs 6 and 7 of the Perrault Declaration, was entirely a choice made by the Association's lawyers, not Mr. Perrault. Whereas the words "water damage" could arguably be used to describe the conditions he found at the building, thus allowing him to sign the Declaration, Mr. Perrault explained in his deposition that "water damage," as used in his Declaration to describe conditions at Windsong, referred only to the wood rot and deterioration of gypsum sheathing that he observed, and nothing more:

> Q [by Mr. Bennion] Now, in Paragraph 6, the declaration says that – it says that you determined that part of the condominium were suffering from water damage as a result of water leaking through the building envelope, and then you give examples.
>
> 'For example, gypsum sheathing and wood framing at the western portion of the south wall are damaged from water leaking through the condominium envelope.'
>
> Again, what did – was this water damage that this paragraph refers to the same as the wood rot and decay that you saw in the framing members of the building, or the deterioration of the gypsum sheathing that's caused by the water intrusion?
>
> A It looks like it would be both because the next sentence says: 'For example, the gypsum sheathing and wood framing in the western portion.' So it would be both.

OPPSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 4
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

> Q Okay. So in other words, the water damage that this paragraph refers to is really the same as the wood rot and the gypsum deterioration; is that right?
>
> A That's correct, yeah.
>
> Q Okay. We're not talking about anything – any other kind of damage, are we?
>
> A I don't believe so.

Perrault Dep., at 56:2-57:1.

ACE retained Jeff Harris of CASE Forensics Corporation to assist it determining the extent, nature, and cause of damage at Windsong.[6] Mr. Harris performed several examinations of the Windsong building, reviewed photographs taken earlier by other investigators (primarily Mr. Perrault), reviewed maintenance records, and spoke with contractors who had examined and performed maintenance on the building, and prepared a report for ACE dated December 26, 2007.[7] More recently, Mr. Harris reviewed the July 15, 2008 Declaration signed by Mr. Perrault, and the transcript of Mr. Perrault's deposition taken on August 28, 2008. He performed additional research in the scientific and engineering literature concerning wood deterioration in buildings and reviewed CASE Forensics' case histories of similar damage to other buildings. He prepared a supplemental report in which he concluded that although it is possible that some of the deterioration of wood framing and gypsum sheathing at Windsong might have taken place between 1989 and 1993, he found no evidence of such and found no scientific or engineering principles that would support Mr. Perrault's conclusion that any deterioration more probably than not occurred between those dates, which conclusion is based mostly on speculation.[8]

### III. ISSUES PRESENTED

1. ACE's policies specifically exclude from coverage the perils of deterioration,

---

[6] Declaration of Jeff Harris (9/15/08), ¶3.
[7] *Id.*, ¶4.
[8] *Id.*, ¶¶5-6; Exhibit B, attached to Harris Decl.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 5
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

wet or dry rot, and mold. "Water damage" is not excluded. May the Association obtain coverage for its water-caused deterioration, rot, or mold damage by renaming its loss "water damage"?

2. Where the Association has not established by evidence that any damage took place during the effective periods of the ACE policies, and where its claim involves no injury to a third-party's property, should the Court apply the third-party liability rule of joint and several liability and require that ACE pay for damage that took place long after its policies expired?

## IV. EVIDENCE RELIED UPON

ACE relies upon the pleadings and papers filed in this lawsuit; the Declaration of Todd C. Hayes (8/7/2008) and attachments thereto; the Declaration of James R. Perrault (7/15/2008) and attachments thereto; the transcript of the Deposition of James R. Perrault (8/28/2008) and Exhibit 4 from that deposition; and the Declaration of Jeff Harris (9/15/2008) and attachments thereto.

## V. AUTHORITY

**A. Rules of Policy Interpretation.**

The Association refers to several rules of insurance policy interpretation under Washington law.[9] Several additional rules of interpretation apply here. Washington law provides that the entire insurance policy must be construed together so as to give force and effect to each provision.[10] Courts may not rewrite a policy to provide for coverage when the plain language of the policy does not so provide.[11]

---

[9] Not all of the rules cited by the Association apply to this case. For example, none of the policy language relevant to this coverage dispute is ambiguous, nor does the Association argue ambiguity in its brief.
[10] *Boeing Co. v. Aetna Cas. & Surety Co.*, 112 Wn.2d 869, 784 P.2d 507 (1990); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992); *Allstate Ins. Co. v. Huston*, 123 Wn. App. 530, 94 P.3d 358 (2004).
[11] *Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 528, 707 P.2d 125 (1985); *Panorama Village Condo. Owners v. Allstate Ins. Co.*, 144 Wn.2d 130, 137, 26 P.3d 910 (2001).

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 6
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

B.   **The ACE Policies Do Not Cover Loss Caused by Deterioration, Wet or Dry Rot, or Mold.**

The Association's Motion is based on its argument that "water damage" caused by water intrusion is covered by ACE policies. The Association draws this argument out of the following exclusion in the policies:

> If you have Comprehensive Protection, your protection does not include coverage for loss or damage caused by or resulting directly or indirectly from the following causes, or occurring in the following situations.
>
> * * *
>
> 16. 'Wear and tear,' deterioration, rust, corrosion, marring or scratching, erosion, wet or dry rot, and mold. However, we will cover resulting loss or damage caused by: vehicles or aircraft, 'sprinkler leakage' water damage, freezing, collapse of a building or falling objects.[12]

This exclusion contains a resulting or ensuing loss provision, that preserves coverage for certain perils if they result or ensue from the perils excluded in the exclusion. *McDonald v. State Farm, supra*, 119 Wn.2d at 734. On its face, the ensuing loss provision in this exclusion does not apply to the Association's loss. No facts support the conclusion, and the Association has not argued, that water damage resulted from deterioration, wood decay, or mold. Rather, those excluded perils resulted from water intrusion at the condominium building.

More fundamentally, for coverage to be preserved for a peril listed in an ensuing loss provision, that peril must be separate and distinct from the perils excluded by the exclusion. Indeed, under the analysis of *Sunbreaker Condominium Assoc. v. Travelers Ins. Co.*, 79 Wn. App. 368, 901 P.2d 1079 (1995), relied upon by the Association, the reference to "water damage" in the exclusion's ensuing loss provision must indicate an intent to regard "water damage" as something different from the perils listed as excluded, including deterioration, wet or dry rot, and mold. As pointed out by the Association, the *Sunbreaker* court regarded the separate reference to "weather conditions" in that case as an intent to treat weather conditions

---

[12] Todd Decl., Ex. C, at 88-89 of 139.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 7
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

as a peril distinct from defective construction, repeated seepage, or rot. The Association claims that the ACE policies characterize "water damage" as a distinct and non-excluded peril.[13]

The problem with the Association's argument is that it ignores what happened at its building. By artful drafting of the Perrault Declaration, the Association's counsel described the damage at the building as "water damage" without once mentioning what it really was: water-caused deterioration, rot, or mold. Mr. Perrault signed the declaration because on its face it was technically accurate, water being a prerequisite for rot, mold, and the deterioration observed at the building. However, Mr. Perrault explained that the water damage he observed at Windsong Condominium consisted entirely of wood decay or rot, or water-caused deterioration of the gypsum sheathing. He testified to this:

> Q Well, when you – when you described that condition of the sheathing as being water damaged, are you referring to anything different than deterioration of the sheathing that was caused by water?
>
> A No. Same thing.[14]
>
> Q Would you describe the condition of the wood that's shown in Photograph 12? I guess, Photograph 13 is another example of that. They both are described as severe decay or completely decayed away. Is that condition water damage?
>
> A It's caused by water. Water is one of the factors that causes it. So I guess I'd characterize that as water damage.
>
> Q In those two areas that we are looking at here in Photograph 12 and Photograph 13, if that is water damage, would you be referring to something different than wood decay?
>
> A I would generally call that wood decay.[15]
>
> Q So in other words, the water damage that this paragraph [6 of the Declaration] refers to is really the same as the wood rot and the gypsum deterioration; is that right?

---

[13] *Sunbreaker*, 79 Wn.App. at 377-78; Plaintiff's Motion, pp. 9-10.
[14] Perrault Dep., at 31:18-22.
[15] Perrault Dep., at 29:25-30:12.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 8
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

> A  That's correct, yeah.
>
> Q  Okay. We're not talking about anything – any other kind of damage, are we?
>
> A  I don't believe so.[16]

Washington law does not permit an insured to evade the operation of a policy exclusion by renaming the peril that caused a loss. That tactic was rejected by the Washington Supreme Court in *Kish v. Ins. Co. of North America*, 125 Wn.2d 164, 883 P.2d 308 (1994). The insureds in that case suffered damage to their homes by flood waters from the Stillaguamish River. Heavy rainfall in the area and snow melt and rain in the mountains caused the river to rise and overflow into a sewage lagoon, which failed and inundated the insureds' homes. The homeowners' insurance policies excluded the peril of flood, but not rain. The insureds argued that the efficient proximate cause of their damage was rain, which was not excluded and was covered. The court rejected their argument because it found no difference between flood and rain-induced flood. "Rain" was "merely another characterization of flood in this case."[17] The court stated: "An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss."[18] *See also, Eide v. State Farm Fire & Cas. Co.*, 79 Wn. App. 346, 901 P.2d 1090 (1995) (heavy rainfall and weakened soil were not distinct from excluded perils of earth movement and rising groundwater; no coverage for policyholders' damage from landslide caused by heavy rain).

This is exactly the argument presented by the Association in this Motion. The Association, faced with loss from severe wood decay and water-caused deterioration of gypsum sheathing, has re-characterized its loss as "water damage." By renaming its loss it can point to the ensuing loss provision of the wear-and-tear exclusion, which preserves coverage for "water damage." But none of this changes the fact that the only damage at the Windsong

---

[16] Perrault Dep., at 56:20-25.
[17] *Kish*, 125 Wn.2d at 171.
[18] *Kish*, 125 Wn.2d at 170, *quoting Chadwick v. Fire Ins. Exch.*, 17 Cal. App. 4th 1112, 1117, 21 Cal. Rpt. 2d 871 (1993).

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 9
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

Condominium was wood rot, deterioration of gypsum sheathing, and mold, all caused by water intrusion.[19] Manipulation of labels for the perils causing a loss in order to create coverage is not permitted under the law. The Association cannot create coverage by characterizing its loss as "water damage" where the only damage it suffered was rot, water-caused deterioration of sheathing, and mold, all excluded perils.

The Association apparently treats the ensuing loss provisions in both the wear-and-tear and the construction defect exclusions as provisions that grant coverage for water damage of any kind. This is incorrect. The Supreme Court explained why treating an ensuing loss clause as a grant of coverage was an improper interpretation:

> Because the structure of an all-risk homeowners' insurance policy consists of a grant of coverage counterbalanced by coverage exclusions, an interpretation of provisions contained in such a policy must acknowledge this structure, which is an important objective source of meaning and intent. Given the placement of the ensuing loss clause in a policy exclusion, it is difficult to reasonably interpret the ensuing loss clause contained in the defective construction and material exclusion to be a grant of coverage.[20]

The Court of Appeals put it succinctly: "Exclusion clauses do not grant coverage; rather, they subtract from it."[21] The ensuing loss provision in the ACE policies preserves coverage for some types of water damage, but does not negate the exclusion for deterioration, rot, or mold.

The insured in *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 109 P.2d 1 (2004), attempted, unsuccessfully, to re-characterize the cause of excluded mold damage in order to create coverage where none existed. In that case, construction defects caused water leaks, both

---

[19] Even though rot, deterioration, and mold might be described as "water damage" because they all depend on the introduction of water to certain materials, this means only that the "water damage" in the exclusion's ensuing loss provision does not include the perils of rot, deterioration, or mold. Coverage would be preserved for any water damage not involving those perils. For example, if rot to framing members within a wall causes a water pipe to break, and the water leaks into the living area, staining the carpet and the insured's couch, the water damage to the carpet and couch would remain covered, even though the loss was caused by rot, which is excluded.
[20] *McDonald*, 119 Wn.2d at 734.
[21] *Harrison Plumbing v. New Hampshire Ins. Co.*, 37 Wn. App. 621, 627, 681 P.2d 875 (1984).

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 10
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

to exterior walls and at a fountain located inside the insured's condominium unit. An engineer determined that the cause of water and mold damages were construction defects, which were excluded by the policy. The homeowner sought to avoid the exclusionary language by claiming that the mold damage was caused by water leaks, which were not excluded. The court rejected that effort because the leaks were part of the same uninterrupted causal chain that began with the defects and ended with the damage.[22]

In a case with facts remarkably similar those presented here by the Association's claim, the Supreme Court of Texas refused to disregard a homeowners policy exclusion for mold simply because the exclusion contained an ensuing loss provision that referred to "water damage." In *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006), the Fiess's homeowners' insurance policy contained an exclusion that stated "we do not cover loss caused by: wear-and-tear, deterioration, ... rust, rot, mold or other fungi." The same exclusion contained this ensuing loss provision:

> We do cover ensuing loss caused by collapse of the building or any part of the building, water damage, or breakage of glass which is a part of the building if the loss would otherwise be covered under this policy.[23]

The Fiesses made a claim under their homeowners' policy for damage resulting from various water leaks in their house, including mold damage. Being dissatisfied with their insurer's payment, they sued, seeking coverage for all mold cleanup costs. The federal district court granted the insurer, State Farm Lloyds, summary judgment on the basis of the mold exclusion. On appeal, the Court of Appeals for the Fifth Circuit certified to the Texas Supreme Court the question of proper application of the exclusion's ensuing loss provision.

In *Fiess*, the Texas Supreme Court determined that the ensuing loss provision in that case did not restore or create coverage for mold simply because it referred to "water damage." The Feisses had argued that the ensuing loss portion of the exclusion ("We do cover ensuing

---

[22] *Wright v. Safeco*, 124 Wn.App. at 275.
[23] *Fiess*, 202 S.W.3d at 746.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE: INSURANCE COVERAGE FOR "WATER DAMAGE" - 11
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

loss caused by water damage") negated the exclusion for mold ("We do not cover loss caused by mold"). The Texas Supreme Court rejected that argument, referring to the insurance policy rule of interpretation that all parts of a policy must be read together, giving meaning to each sentence, clause and word to avoid rendering any portion inoperative. The same rule applies in Washington law.[24] The Texas court then explained that an "ensuing loss" is a loss that follows as a consequence of some preceding event or circumstance. Therefore, the policy's ensuing loss provision applied only to losses caused by an intervening cause that followed from an excluded peril listed in the exclusion.[25] Water damage did not result or ensue from the mold damage claimed by the Fiesses. Therefore, the ensuing loss provision did not apply.

The Texas court also addressed the meaning of "water damage" in the context of the Fiess's loss. In determining that "water damage" in this context could mean nothing other than mold damage, the Texas court quoted the "legendary" Judge Henry Friendly, sitting by designation with the Fifth Circuit:

> We do not think that a single phenomenon that is clearly an excluded risk under the policy was meant to become compensable because in a philosophical sense it can also be classified as water damage; it would not be easy to find a case of rot or dampness of atmosphere not equally subject to that label and the exclusions would become practically meaningless. In our case the rot may have ensued from water but not from water damage, and the damage ensuing from the rot was not the damage from the direct intrusion of water conveyed by the phrase 'water damage.'[26]

The Texas court agreed with Judge Friendly, remarking that mold does not grow without water:

---

[24] *Boeing Co. v. Aetna Cas. & Surety Co.*, 112 Wn.2d 869, 784 P.2d 507 (1990); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992); *Allstate Ins. Co. v. Huston*, 123 Wn. App. 530, 94 P.3d 358 (2004).
[25] *Fiess*, 202 S.W.3d at 749, citing *Lambros v. Standard Fire Ins. Co.*, 530 S.W.2d 138 (Tex. Civ. App. 1975, *writ refused*).
[26] *Fiess*, 202 S.W.3d at 750, quoting *Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir. 1965).

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 12
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

> If every leak and drip is 'water damage,' then it is hard to imagine any mold, rust, or rot excluded by this policy, and the mold exclusion would be practically meaningless.[27]

The conclusion of the Texas court, that the ensuing loss provision for "water damage" does not trump the exclusion for mold damage, lines up exactly with Washington law. Washington law requires an interpretation of insurance contracts that provides meaning and effect to each and every part of the policy. Washington law holds that an ensuing or resulting loss provision, such as the one in the ACE policies, applies where an intervening cause following an excluded peril produces damage separate from that produced by the excluded peril, and coverage for such ensuing loss is preserved unless it, too, is excluded. Finally, Washington law does not permit the creation of coverage for excluded perils by simply renaming or re-characterizing the loss in a different fashion in an attempt to evade the exclusion.

Obviously, the Texas case is not controlling authority in Washington. But the reasoning in *Fiess* resonates with Washington law and conforms to the analysis in Washington's *Wright v. Safeco* decision, which held that "water damage" was not different than "mold damage," and that the insured's mold damage in that case was not caused by water damage, but by water leaks that resulted from excluded construction defects.

The Windsong Association's argument that it suffered "water damage" covered by the exclusion's resulting loss provision must also fail. Placing a different label on the rot and deterioration damage found at the Windsong building in no way changes the nature of the damage or the fact that the ACE policies specifically exclude rot and deterioration. The rot and deterioration did not result in any further or different water damage, nor was the rot or deterioration caused by water damage. The damage was caused by water leaking through the building envelope because of construction defects and the building's old age. Because the efficient proximate cause of all the damage was construction defects, which are excluded by

---

[27] *Id.*

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 13
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

the ACE policies, and because the rot and deterioration damage that resulted from the defects are also excluded, the ACE policies provide no coverage for this claim.

C. **The Association Has Not Met Its Burden of Proof.**

In its Motion, the Association asserts that because the ACE policies are written on an "all risk" basis, "deciding coverage is essentially a one-step process" with the only issue being whether ACE can meet its burden to show that exclusions apply to defeat coverage.[28] This is incorrect. The existence of all-risk coverage does not justify the wholesale abandonment of long-established Washington law, which holds that analyzing coverage is a *two-step* process. First, the policyholder has the burden to show that its loss falls within the scope of the policy's coverage. If that showing is made, the insurer has the burden to show that the loss is excluded.[29] This rule applies here as it does in all insurance matters. The fact is, the Association has not met its burden of establishing that its loss falls within the coverage of the ACE policies. At the very least, it has not established that any damage resulting from water intrusion took place between 1989 and 1993, when the ACE policies were effective.

In this Motion, the Association seeks the Court's ruling that if some "water damage" occurred during ACE's policy periods, then those policies must pay for all further water damage, even for damage that did not take place until years later. But this issue has no meaning unless the Association can establish that at least some damage did take place before ACE's policies expired. The Association has not done this, and the issue of how much damage the ACE policies must cover is not properly before this Court. Therefore, the Association's second issue in this Motion should be denied. (Additionally, if on the first issue the Court rules that the ACE policies do not cover "water damage," then the Court should also deny the second issue, or at least decline to rule on it.)

---

[28] Plaintiff's Motion, p. 9, fn. 30.
[29] *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 431-32, 38 P.3d 322 (2002); *American Star Ins. v. Grice*, 121 Wn.2d 869, 854 P.2d 622 (1993); *Wright v. Safeco Ins. Co. of Am., supra.*

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 14
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

D. **There Is No Evidence That Actual Damage Took Place During the Effective Periods of the ACE Policies.**

The Association relies on the July 15, 2008 Declaration of James R. Perrault to establish the existence of damage prior to 1993. The Association has offered no other evidence, ever, to support that conclusion.

The Perrault Declaration states Mr. Perrault's opinion that some leak-induced water damage was "more-probably-than-not in existence between 1989 and 1993."[30] He based this opinion on the condition of the Windsong building when he saw it, the nature of the damaged building components (wood framing), and the "general rate of decay of such building components."[31] However, in his deposition, Mr. Perrault could not specify what this "general rate of decay" was. He made no engineering calculation to reach his opinion as to when the damage occurred.[32] He stated that the "general rate of decay" was actually highly variable and dependent on the particular construction and condition of each building or part of a building. He said that it takes many years for such severe decay to occur, 23 years for the Windsong building. He then stated that in other buildings the same severity of decay may take much longer, and in others it may occur faster.[33] Even at Windsong, the "rate of decay" varied from location to location at that building.[34] He also stated that the "rate of decay" depended on the type of wood material or species of wood used in construction.[35]

In fact, there is no "general" rate of decay. Wood decay is not necessarily a steady, linear progression. Jeff Harris of the engineering firm CASE Forensics assisted ACE in evaluating the damage at the Windsong Condominium. Mr. Harris has examined many buildings that have experienced water intrusion/rot conditions, and has studied the scientific

---

[30] Perrault Decl., p. 3.
[31] Id.
[32] Perrault Dep., 58:23-59:4. In his work for State Farm, Mr. Perrault did rely on calculations to determine the approximate time at which the rot damage reached the severity of substantial structural impairment. Harris Decl., Ex. B, p.8 of 16.
[33] Perrault Dep., 63:1-64:10.
[34] Perrault Dep., 64:19-65:8.
[35] Perrault Dep., 65:15-18.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 15
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

literature concerning the development of wood rot in buildings, including its rate of development. He has observed some buildings in which no rot condition was detected years after construction, where severe decay rapidly developed later on.[36] He states that the rate of wood decay in buildings is variable and cannot be generalized.[37] Based on his observations at the Windsong building, and his knowledge of the development of wood decay in such buildings and the factors that influence the speed at which decay develops, Mr. Harris believes that it is possible that some decay at Windsong may have taken place as early as 1993. But this is only a possibility; no evidence supports the actual existence of decay damage at that time. No one observed or even suspected the existence of damage before the last ACE policy expired. Any conclusion regarding such early damage would necessarily involve speculation, according to Mr. Harris.[38]

The Court should disregard the opinion expressed in the Perrault Declaration concerning the existence of actual damage during the ACE policy terms. The opinion is based on an unproven and unreliable assumption—the linear rate of decay progression—and is speculative. At the very least, there remains a question of fact as to the existence of actual damage in the 1989-1993 time period. This alone precludes the Court's ruling on the Association's second issue. The extent of ACE's coverage obligation is presently not at issue and need not be determined unless the Association first establishes that actual damage took place when ACE's coverage was in force. The Association has not done this.

E. **The ACE Policies Do Not Cover all Damage Developing over Decades of Exposure to Water, even if some Damage Took Place between 1989 and 1993.**

The Association has not met its burden of showing that it suffered actual damage when ACE's policies were effective. The Court should not rule on the question of whether ACE would be obligated to pay for all subsequent damage.

---

[36] For example, Harris Decl., Ex. B, p.11.
[37] Id., Ex. B, pp.14-16.
[38] Id., ¶6, Ex. B, pp.14-16.

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 16
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

Even assuming that some damage took place during ACE's coverage period, the Association's conclusion that all following damage must be covered by the ACE policies is wrong. The only legal authority cited by the Association to support its theory is *American National Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 951 P.2d 250 (1988), a case that followed *Gruol Constr. Co. v. Ins. Co. of N. Am.*, 11 Wn. App. 632, 524 P.2d 427 (1974), in holding that all liability policies in effect during the time that a third-party claimant's property sustains progressive or continuous damage are jointly and severally liable for all of the damage that develops, including damage that might have occurred outside of the policy term of a particular policy. While attempting to apply this rule to its property insurance claim, the Association overlooks the major distinction between third-party liability insurance and first-party property insurance. These different coverages have different purposes and the same rules do not always apply to both.

Third-party liability insurance provides protection for the policyholder for its liability to someone else. In contrast, first-party property insurance provides protection for losses to the policyholder's own property.[39] This important difference determines the extent of the insurer's liability under each type of insurance coverage.

A third-party liability policy insures the policyholder's liability to someone else. Although the trigger of coverage for such a policy depends on the occurrence of some property damage or injury during the policy period, it is not the property damage itself that is insured; the policy insures the insured's *liability*. The insured's liability for any property damage depends on more than the existence of the damage. Other factors determine the insured's legal liability, such as the plaintiff's comparative negligence, the insured's possible legal immunity, and other defenses, such as waiver or the statute of limitations. Because the insurer's liability under the policy is not necessarily tied to the specific policy period—the insured's liability for

---

[39] *Hillhaven Prop. Ltd. v. Sellen Constr. Co.*, 133 Wn.2d 751, 759, 948 P.2d 796 (1997); *State Farm Fire & Cas. Co. v. English Cove Assoc.*, 121 Wn. App. 358, 368, 88 P.3d 986 (2004).

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 17
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

harm may be determined by conduct or events that took place after the policy expired, even if the property damage took place before expiration—Washington courts have based the trigger of coverage on actual damage during the policy period, but have allowed insureds to recover under the liability coverage all damage that flowed from the insured's liability.[40]

First-party insurance coverage is different. It protects the insured against physical loss to its own property. No one else is involved and the extent of the insurer's obligation is based entirely on the property damage and the policy provisions alone, not the insured's conduct or its defenses. Coverage is purchased for a certain time. The insured pays no premium for property insurance coverage that extends indefinitely beyond expiration of the policy that is purchased.[41]

For these reasons, no Washington court has applied the *Gruol Construction/B&L Trucking* rule of joint and several liability for progressive, continuous property damage in the first-party property insurance context. This Court should not be the first to do so. The Court should deny the Association's Motion in its entirety.

## VI. CONCLUSION

The Association knows that deterioration, wet and dry rot, and mold are all excluded by the ACE policies. Attempting to create coverage for this excluded damage, the Association re-characterizes its loss as "water damage," clinging to the resulting loss provision of the wear-and-tear exclusion. But the rot and deterioration observed at the Windsong building did not result in any separate "water damage." The renaming of a loss to avoid the effect of a policy exclusion has been rejected over and over by Washington courts. This Court should now deny the Association's Partial Summary Judgment Motion concerning insurance coverage for "water damage," and rule that the ACE policies do not cover deterioration, wet or dry rot, or

---

[40] *Gruol Constr. Co., supra.*
[41] *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 88, 794 P.2d 1259 (1990) ("Although the public is served by maximizing the extent of protection afforded by [UIM] coverage, the insurance company is not required to provide the coverage for free.").

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 18
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

mold, even if such damage is regarded as "resulting loss or damage." The Court should also reject the Association's request for a ruling on the extent of ACE's hypothetical liability for all property damage, as the Association has not established that any damage took place when ACE's policies were effective.

ACE requests oral argument for this Motion. A proposed order is filed with this opposition brief.

Dated: September 15, 2008

COZEN O'CONNOR

By: *s/ Craig H. Bennion*
Craig H. Bennion, WSBA No. 11646
Washington Mutual Tower
1201 Third Avenue, Suite 5200
Seattle, Washington 98101
Telephone: 206.340.1000
Toll Free Phone: 800.423.1950
Facsimile: 206.621.8783
Attorneys for Defendants
Bankers Standard Insurance Company and
ACE Fire Underwriters Insurance Company

SEATTLE\757807\1 187388.000

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 19
C08-0162 JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2008, I electronically filed the following documents:

ACE'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE: INSURANCE COVERAGE FOR "WATER DAMAGE"

DECLARATION OF JEFF HARRIS

[PROPOSED] ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT RE: INSURANCE COVERAGE FOR "WATER DAMAGE"

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gregory L. Harper, WSBA No. 27311 - greg@harperhayes.com
Todd C. Hayes, WSBA No. 26361 - todd@harperhayes.com
Michael J. Crisera, WSBA No. 30353 - mcrisera@harperhayes.com
**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, WA 98101

Counsel for Plaintiff

DATED this 15th day of September, 2008.

COZEN O'CONNOR

By: *s/ Craig H. Bennion*
Craig H. Bennion, WSBA No. 11646

Washington Mutual Tower
1201 Third Avenue, Suite 5200
Seattle, Washington 98101
Telephone: 206.340.1000
Toll Free Phone: 800.423.1950
Facsimile: 206.621.8783
Attorneys for Defendants
Bankers Standard Insurance Company and
ACE Fire Underwriters Insurance Company

SEATTLE\758683\1 187388.000
OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
INSURANCE COVERAGE FOR "WATER DAMAGE" - 20
C08-0162 JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3071
(206) 340-1000