JUDGE JOHN C. COUGHENOUR

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| WINDSONG CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>BANKERS STANDARD INSURANCE COMPANY, a foreign corporation; ACE FIRE UNDERWRITERS INSURANCE COMPANY (f/k/a CIGNA FIRE UNDERWRITERS INSURANCE COMPANY), a foreign corporation,<br><br>Defendants. | No. C08-0162 JCC<br><br>PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

Defendants ("ACE") argue that the ACE Policies do not cover "water damage" because that damage is indistinguishable from the excluded perils of "deterioration" and "rot." But this argument ignores the fact that the ACE Policies specifically carve "water damage" out as a distinct – and non-excluded – cause of loss. Thus, under the plain

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 1

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

language of the policies, Sunbreaker,[1] and Washington's other "efficient proximate cause" cases, "water damage" is covered.

ACE also challenges engineer James Perrault's ability to testify that some "water damage" occurred during ACE's policy periods (1989-1993). But the Association did not seek an order that damage did in fact occur during the policy periods, and it submitted Mr. Perrault's testimony simply to demonstrate that the existence of damage during the policy periods is a legitimate issue in this case (*i.e.*, to show the Association is not simply seeking an advisory ruling). Regardless, Mr. Perrault has the requisite foundation and expertise to offer the testimony he did, and the Court should not strike or ignore his declaration.

Finally, ACE argues that its Policies do not cover continuing damage that occurs outside the policy periods because Washington's "joint and several" cases involve liability insurance. But those cases construed the same type of language ACE chose to include in its property insurance, so they are on point. Moreover, ACE does not refute the fact that the plain language of its property insurance does not restrict coverage to damage occurring during ACE's policy periods. Given this fact, the Court should rule that if an "occurrence" results in damage during the policy period, then the ACE Policies cover *all* damage resulting from that occurrence – including any continuing damage that occurs before or after ACE's policy periods.

---

[1] Sunbreaker Condo. Ass'n v. Travelers Ins. Co., 79 Wn. App. 368, 374-375, 901 P.2d 1079 (1995).

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 2

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

## II. ARGUMENT

### A. THE POLICIES COVER "WATER DAMAGE"

The ACE Policies construe "water damage" as a distinct and covered peril. As a result, a jury applying Washington's efficient proximate cause rule could determine that "water damage" proximately caused the Association's loss.

In Washington, the efficient proximate cause rule imposes liability on an insurer for a loss proximately caused by a covered peril, even though other excluded perils contributed to the loss.[2] The efficient proximate cause rule applies where two or more distinct perils cause a loss, and the policy covers one or more, but not all.[3] When determining whether two perils are distinct, and thus subject to the efficient proximate cause rule, Washington courts rely solely on policy language.[4] This means that two events can be a single peril under one policy, and distinct under another.[5] If a contract treats separate events as distinct perils for purposes of the efficient proximate cause rule, a jury must resolve the *factual* question of which peril was the efficient proximate cause of the insured's loss.[6]

---

[2] Sunbreaker, 79 Wn. App. at 374-75 ("The efficient proximate cause rule is a rule of contract construction. The rule requires courts to apply insurance contract causation language with reference to the efficient proximate cause of the loss, rather than its immediate, physical cause. The rule effectively imposes liability on an insurer for a loss efficiently caused by a covered peril, even though other, excluded perils contributed to the loss.") (internal citations omitted).

[3] Sunbreaker, 79 Wn. App. at 375 ("The efficient proximate cause rule applies only where two or more distinct perils operate to cause a loss, and the policy covers one ore more, but not all.").

[4] Sunbreaker, 79 Wn. App. at 376 ("[C]haracterization of perils focuses on whether the events are contractually distinct, with reference to specific policy language and the perils allegedly involved in the particular factual setting.").

[5] Sunbreaker, 79 Wn. App. at 376 ("For even if two events are a single peril for purposes of a particular contract, the same exact events might be distinct perils under another.").

[6] Eide v. State Farm Fire and Cas. Co., 79 Wn. App. 346, 350, 901 P.2d 1090 (1995) ("The identification of a certain event as the efficient proximate cause of a loss is a question of fact.").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
C08-0162 JCC - 3

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

Here, the ACE Policies treat "water damage" as a distinct peril. The "wear and tear" exclusion (which also excludes "rot" and "deterioration") specifically excepts "water damage" from that exclusion. While this exception may not create coverage,[7] it nevertheless demonstrates an intent by ACE to consider "water damage" distinct from "rot" or "deterioration." If "water damage" and "rot" are the same thing, why would ACE have used both phrases? Accepting ACE's argument would require the Court to impermissibly ignore policy language.[8]

Sunbreaker also supports the Association's analysis. There, the Washington Court of Appeals held that a peril of the type listed in a "resulting loss" clause (*i.e.*, a clause identifying non-excluded causes of loss) was a distinct peril for purposes of the efficient proximate cause rule.[9] In other words, the fact that the insurer in Sunbreaker used the phrases "windstorm" and "water damage" in its "resulting loss" clause demonstrated an intent to treat those as distinct (and non-excluded) perils.

Moreover, the fact that the ACE Policies specifically refer to "water damage" makes this case distinguishable from Kish v. Ins. Co. of N. America,[10] where the policy did not

---

[7] The Association is not arguing that the "water damage" exception creates coverage. Rather, the Association is simply arguing that the exception indicates "water damage" is a distinct peril (one that is not excluded, and is therefore covered).

[8] *See* Graff v. Allstate Ins. Co., 113 Wn. App. 799, 802-03, 54 P.3d 1266 (2002) ("[W]e interpret an insurance policy to give effect to each of its provisions.").

[9] Sunbreaker, 79 Wn. App. 368, 377 ("The policy, however, qualifies its exclusion: the insurer will pay for loss or damage by 'specified causes of loss.' Many natural events, including windstorm, hail, and water damage, are 'specified causes of loss.' . . . Taken together, the fungus exclusion exception for 'specified causes of loss,' and the limited weather conditions exclusion, indicate an intent to characterize dry rot and wind-driven rain as distinct perils.").

[10] Kish v. Ins. Co. of N. America, 125 Wn.2d 164, 883 P.2d 308 (1994).

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 4

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

distinguish between "rain" and "flood" (the Kish policy did not even mention "rain").[11] Similarly, the policy in Eide v. State Farm Fire and Cas. Co.[12] did not characterize "weakened soil" as something distinct from "landslide."[13] Here, because the ACE Policies *do* refer to both "water damage" and "rot," "water damage" is a distinct peril – and one a jury may find was the efficient proximate cause of the Association's loss.

ACE also cites Mr. Perrault's deposition testimony in support of its argument that "rot" and "water damage" are indistinct. ACE claims that because Mr. Perrault characterizes the conditions he recently observed at the condominium as both "water damage" and "rot"/"decay," then "water damage" is not a distinct peril.

But this ignores the fact that only the policy language determines whether perils are distinct from one another for purposes of the efficient proximate cause rule.[14] Moreover, a witness's testimony could never determine the *purely legal question* of what the ACE Policies do and do not cover. In addition, how Mr. Perrault labels the *current conditions* at the Condominium says nothing about what *caused* the Association's loss ("proximately" or otherwise). In other words, even if Mr. Perrault characterizes the Condominium's current framing and sheathing damage as both "rot" and "water damage," this does not mean that "water damage" did not *precede* "rot" (or that "water damage" did not proximately cause the Association's loss).

---

[11] Kish, 125 Wn.2d at 171 ("We believe the average purchaser of insurance would expect that the term 'flood' would encompass rain-induced flood . . . We do not believe flood and rain are distinct perils in this instance.").

[12] Eide v. State Farm Fire and Cas. Co., 79 Wn. App. 346, 901 P.2d 1090 (1995).

[13] Eide, 79 Wn. App. at 351 ("Weakened soil, in this context, is but another way of describing the excluded peril of landslide.").

[14] Sunbreaker, 79 Wn. App. at 376 ("[C]haracterization of perils focuses on whether the events are contractually distinct, with reference to specific policy language and the perils allegedly involved in the particular factual setting.").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 5

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

Finally, the efficient proximate cause rule makes this case distinguishable from Wright v. Safeco Ins. Co. of Am.,[15] and the Texas opinion that ACE cites, Fiess v. State Farm Lloyds.[16] Wright is distinguishable because an expert witness's report established the only possible efficient proximate causes of the loss in that case – "construction defects" and "mold" – and both were excluded.[17] In other words, the Court of Appeals decided as a matter of law that one of the two (excluded) perils in the report had to be the efficient proximate cause of the policyholder's loss, so it was irrelevant whether a non-excluded peril *that was not identified in the policy* fell within the chain of causation.

Here, by contrast, "water damage" *is* identified in ACE's Policies, ACE carves it out as a distinct and covered peril, and no expert report establishes that something other than "water damage" is necessarily the efficient proximate cause of the Association's loss.

Fiess, by contrast, is distinguishable because it does not employ Washington's efficient proximate cause analysis at all. The Fiess court stated that in its opinion water damage is not distinguishable from mold. But Sunbreaker – a Washington case – states that if an ensuing loss provision specifically refers to a cause of loss, it *is* a distinct peril for purposes of the efficient proximate cause rule. Thus, according to the state law that governs this case, because the ACE Policies here carve out "water damage" as a distinct peril from "rot" and "deterioration," "water damage" is a covered cause of loss.

---

[15] Wright v. Safeco Ins. Co. of Am., 124 Wn. App. 263, 109 P.2d 1 (2004).

[16] Fiess v. State Farm Lloyds, 202 S.W.3d 744 (Tex. 2006).

[17] Wright, 124 Wn. App. at 275 ("Wright argues that the efficient proximate cause of the mold damage is water leaks, not construction defects that caused the water leaks. ***But according to the WJE report***, the cause of water and mold damages in the fountain, laundry, and exterior wall areas ***was construction defects*** . . . The trial court did not err when it granted summary judgment dismissing Wright's coverage claims because they were excluded under ***the construction defect exclusion***.") (emphasis added).

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
C08-0162 JCC - 6

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

In sum, because the plain language of ACE's Policies and Washington law treat "water damage" as a peril distinct from "rot," "deterioration," and "mold," the Court should rule that "water damage" is a covered peril, and allow a jury to decide what peril was the efficient proximate cause of the Association's loss.[18]

**B. THE COURT SHOULD NOT STRIKE OR IGNORE MR. PERRAULT'S TESTIMONY**

ACE next argues that the Court should ignore or strike engineer James Perrault's declaration because Mr. Perrault purportedly lacks the necessary foundation or expertise to offer his testimony. This argument fails for at least two reasons.

First, it ignores the fact that Mr. Perrault's testimony is not essential to the Court's decision. The only issues that the Association's motion raises are (1) whether the ACE Policies cover "water damage"; and (2) whether the ACE Policies cover <u>all</u> "water damage" resulting from an event that caused within-policy-period damage, even if some of the damage occurred outside the policy period. The Court does not need Mr. Perrault's testimony to address either of these issues. The Association included Mr. Perrault's testimony simply to indicate that whether covered damage took place during ACE's policy periods is an issue legitimately in dispute (*i.e.*, to demonstrate that the Court's resolution of the above-described issues would not simply be an advisory ruling). But because the Association is not seeking a ruling that covered damage actually took place during ACE's

---

[18] As in <u>Sunbreaker</u>, a jury could resolve this question in a number of ways. It could determine that "water damage," as a distinct peril, was the efficient proximate cause of the loss. It could determine that "rot," an excluded peril, was the efficient proximate cause of the loss. Or it could determine that an excluded peril (*e.g.*, faulty construction) was the efficient proximate cause of the loss, but that a non-excluded peril (*e.g.*, water damage) then ensued, thus preserving coverage.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 7

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

policy periods, the Court need not rely on Mr. Perrault's testimony to address the Association's motion.

Second, contrary to ACE's argument, Mr. Perrault does have the requisite foundation and expertise to opine that at least some water damage took place during the 1989-1993 policy periods. Under Federal Rule of Evidence 702, an individual may provide expert opinions if he or she has specialized knowledge, skill, experience, training, or education.[19] The Court has discretion to determine whether an individual possesses these qualities.[20]

Here, Mr. Perrault has the required knowledge, skill, experience, training, and education to reliably testify that some "water damage" occurred at the Condominium during ACE's policy periods. Mr. Perrault is a licensed Civil and Structural Engineer.[21] Over his career, Mr. Perrault has analyzed the timing of damage at between 100 and 200 buildings.[22] Mr. Perrault has also studied articles and other publications addressing rates of wood decay.[23] Mr. Perrault conducted an on-site investigation at the Condominium that involved removing sections of the Condominium's stucco exterior and examining the building's

---

[19] Fed. R. Ev. 702 ("If scientific, technical, or other specialized knowledge will assist a trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.").

[20] McKendall v. Crown Control Corp., 122 F.3d 803, 806 (9th Cir. 1997) ("The Court has broad discretionary powers in determining whether or not the proposed expert is qualified by 'knowledge, skill, experience, training, or education.'").

[21] *Declaration of Michael J. Crisera*, at 4 ("Q: [Y]ou are a registered licensed professional engineer and civil and structural engineer; is that right? A: Correct.").

[22] *Crisera Decl.*, at 12 ("Q: Have you performed an analysis like the one you just described here on other projects? A: Yes. Q: Can you say how many? A: Probably 100 to 200, I would say.").

[23] *Crisera Decl.*, at 10 ("Q: Have you studied or read any treatises, articles, any kinds of publications that address the wood rot or decay process and discuss, for instance, the rate of decay or what conditions must be present? A: Yes.").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 8

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

underlying framing and sheathing components.[24] During this investigation, Mr. Perrault observed both the Condominium's water damage, as well as the sources of the building's water intrusion.[25]

Based on observations during his on-site inspection and his knowledge of the Condominium's age, Mr. Perrault concluded that water began intruding into the building during the early 1980s.[26] Mr. Perrault further concluded that the water intrusion at the Condominium remained in a constantly-worsening condition,[27] and that no intervening events took place (like re-caulking building flashings and control joints) that would have slowed this ongoing condition.[28] As a result, Mr. Perrault concluded *some* water damage more probably than not occurred between 1989 and 1993.[29]

---

[24] *Declaration of James R. Perrault (Docket No 18)*, ¶ 4 ("As part of that investigation, I directed a contractor to remove siding and other 'building envelope' components at certain locations around the Condominium for the purpose of evaluating the various layers of building components.").

[25] *Crisera Decl.*, at 5 ("Q: [A]nd so what was the objective of the investigation that you conducted? A: Well, to determine of there was water intrusion occurring that was leading to damage in the building, in the walls, the decks, the roof, that then they wanted me to determine the causes for that for the damage . . . .").

[26] *Crisera Decl.*, at 7 ("We looked at what we thing the cause of the water intrusion is, and considering the building was built in 1980, and flashing and control joints would have opened up enough to allow water intrusion to occur at corners where those joints and flashing pieces meet within probably two to three years after it was built, the water intrusion was starting by 1983.").

[27] *Crisera Decl.*, at 8-9 ("Q: And that those conditions remained constant for, well, all the rest of the time period? A: I wouldn't say they remained constant. They remained constantly worsening. So in other words the water then initially enters, causes a small amount of damage, and then each year as more and more rain enters the building, that additional amount of rain causes the damage to worsen.").

[28] *Crisera Decl.*, at 6 ("[T]here's not any big mitigating factor like they came in and recaulked everything at multiple times, and they interrupted that process, at least that we know about."); at 46-47 ("[I]f we see a lot of caulking at buildings, you know, like they've been out here caulking, there's different colors, applications over things that wouldn't have been done during original construction, then we try to factor that in. But honestly I don't recall seeing that on this building.").

[29] *Perrault Decl.*, at ¶ 7; *Crisera Decl.*, at 7-8 ("[I]n 1983 there would have been no sign of it yet. But 1989, I would expect to see staining and the start of degradation of the gypsum sheathing. By '93 it would probably be worse, and I would probably have decay occurring in the framing already by the early '90s because by the late '90s, '96 to 2000, we are reaching substantial structural impairment in framing. So I would have to say, yes, there would be water damage to gypsum sheathing and decay occurring in the '89 to '93 time period.").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 9

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

This testimony is no different than an accident reconstruction expert who opines about what happened at a crash site, or a "cause and origin" expert who testifies about a fire scene. The expert may not have been present during the accident or fire, and he may not have a particular machine that definitively calculates how fast a car was going or where a fire started. But those facts do not prevent the expert from testifying – based on his expertise and post-event observations – about what likely happened at the accident or fire scene. ACE's complaints thus go to the weight of Mr. Perrault's testimony, not its admissibility.

## C. ACE'S *PROPERTY* INSURANCE DOES NOT LIMIT COVERAGE TO DAMAGE OCCURRING DURING THE POLICY PERIODS

The Association's motion set forth three reasons why the ACE Policies cover all damage resulting from an event that causes damage during ACE's policy periods.

First, the Association explained that ACE's property coverage at most requires that that damage arise from an "occurrence." Thus, if an accidental event caused damage during ACE's policy periods – and thus qualifies as "an occurrence" – then ACE promises to pay for *all* damage resulting from that event, regardless of when the damage occurred.

Second, the Association explained that ACE chose not to include in its *property* insurance the same type of temporal limitation that it placed in its *liability coverage*: "This insurance applies to . . . 'property damage' only if . . . [the] 'property damage' occurs during the policy period."[30] The fact that ACE could have added this temporal limitation to its *property* insurance, but did not, is a fact that Washington law construes against ACE.[31]

---

[30] *Declaration of Todd C. Hayes* (Docket No 19), at 102 of 139.

[31] *See* Ellis Court, 117 Wn. App. at 815 (fact that insurer used "discovery" language elsewhere in its policy should be construed against insurer in deciding whether to read "discovery" element into property coverage).

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 10

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

Finally, the Association explained that under Washington law, unless a policy expressly states otherwise, any insurer "on the risk" during part of an ongoing loss, is jointly and severally liable for all of the ongoing loss, including damage that occurs outside the policy period.

In its response brief, ACE challenges only the Association's third argument. ACE specifically does not challenge the Association's argument that ACE's property coverage does not place any temporal limitation on what damage is covered. Nor does ACE challenge the Association's argument that ACE could have limited its property coverage in the way that it limited its liability coverage. Summary judgment is therefore appropriate based on these un-rebutted arguments alone.

But ACE's arguments about the applicability of B&L Trucking[32] and Gruol[33] also fail. Although those cases did involve liability insurance, they are nevertheless persuasive here because they address the same "occurrence" language that ACE incorporated into its *property* insurance coverage. Moreover, B&L Trucking and Gruol support the more general proposition that if an insurer wants to limits its responsibility to only a particular portion of a covered loss, then the insurer must expressly state that in the policy. Absent such an express statement, the insurer is liable for the entire loss.[34]

Here, ACE promised without limitation that it would cover damage resulting from "an occurrence" – an accidental event that causes damage during the policy period. Thus, if

---

[32] American Nat. Fire Ins. Co. v. B&L Trucking, 134 Wn.2d 413, 951 P.2d 250 (1998).

[33] Gruol Constr. Co., Inc. v. Ins. Co. of N. America, 11 Wn. App. 632, 524 P.2d 427 (1974).

[34] *See, e.g.*, B&L Trucking, 134 Wn.2d at 428 ("If the insurer wished to limit its liability through a pro rata allocation of damages once a policy is triggered, the insurer could have included that language in the policy. Here there is no such language.").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 11

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

leaks caused damage during ACE's policy periods, then ACE is liable for all damage resulting from those leaks, regardless of when that damage occurred.[35]

### III. CONCLUSION

For the reasons stated above and in the Association's opening brief, the Court should rule as a matter of law that (1) ACE's Policies cover "water damage" resulting from accidental water intrusion, and (2) because the ACE Policies place no temporal limitation on the promise to pay for damage arising from "an occurrence," the policies cover *all* damage resulting from that occurrence.

DATED this 19th day of September, 2008.

HARPER | HAYES PLLC

By: /s/ Todd C. Hayes
Todd C. Hayes, WSBA No. 26361
Gregory L. Harper, WSBA No. 27311
Michael J. Crisera, WSBA No. 30353
Attorneys for Plaintiff

---

[35] ACE also argued in its opposition brief that the Association failed to cite any "first-party" cases in support of its "timing" argument. But that is because other standardized first-party policies, unlike ACE's, often *do* limit coverage to damage that occurs during the policy period. *See, e.g.*, Glass v. Missouri Property Ins. Placement Facility, 912 S.W.2d 653, 659 (Mo. Ct. App. 1995) ("[T]his policy applies only to loss which occurs during the policy period."); Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 584 (E.D. Pa. 1999) (noting "homeowners policy 'applies only to loss in Section 1 . . . which occurs during the policy period'").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
**C08-0162 JCC** - 12

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206.340.8010

# CERTIFICATE OF SERVICE

The undersigned certifies that on *Friday, September 19, 2008*, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

**NAME:** Craig Bennion
**EMAIL ADDRESS:** cbennion@cozen.com
**REPRESENTING:** Defendant

DATED *September 19, 2008* in Seattle, Washington.

_Victoria Heindel_
Victoria Heindel

CERTIFICATE OF SERVICE - 1

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010